Dennis James SMITH *v*. STATE of Arkansas

CR 02-895

95 S.W.3d 801

Supreme Court of Arkansas
Opinion delivered January 23, 2003

470

*Gary W. Potts*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Dennis Smith was convicted of aggravated robbery and sentenced to life imprisonment by a Desha County jury on December 18, 2001. The aggravated robbery was the first event in a crime spree that

took place on June 22, 2000, when Smith, armed with a handgun, entered a grocery store in the town of Reed in Desha County and demanded money from the owner, George Barnes. At gunpoint, Smith took Barnes's money bag, and then Smith told Barnes to hand over the keys to his truck. Barnes kept the truck keys, and Smith, still pointing the gun at Barnes, told Barnes to get in his truck. The two men got in the truck, Smith still holding the bank bag, and they proceeded to the nearby Tillar Airport, in Drew County.

Once at the airport, Smith forced Barnes, Wes Lawson, an airport employee, and Judy Quandt, co-owner of the airport's flying service, into the office. Smith struck Mrs. Quandt in the head with the butt of his pistol, and had her call her husband, Frank Quandt, and tell him that Smith would kill the three hostages if Mr. Quandt did not return to the airport with his crop duster. When Mr. Quandt returned to the airstrip and exited his plane, he was still wearing hearing protection, and did not hear Smith order him to "stop and get naked"; Smith shot him in the stomach. Smith then shot Lawson in the arm and chest as Lawson ran out of the office. Smith also raped Mrs. Quandt and forced her to perform oral sex on him and on Barnes. State Police were later able to negotiate the release of all of the hostages.

Smith was convicted in Drew County on July 18, 2001, of three counts of kidnapping, two counts of attempted capital murder, four counts of rape, one count of first-degree battery, and one count of vehicular piracy. The Drew County Circuit Court severed the aggravated robbery charge. Smith was then tried for aggravated robbery in Desha County on December 18, 2001, and the jury convicted him and sentenced him to life in prison, which resulted in this appeal.

In this case involving the aggravated robbery, Smith moved in limine to exclude evidence of anything that happened after leaving the grocery store in Reed. He urged to the trial court that the act of putting Barnes into the truck and taking him to the airport implied a charge of kidnapping, with which he was not being charged. The State responded that it needed to offer corroborating evidence that Smith still possessed a firearm when he

and Barnes got out of the truck, and that Smith's brandishing of the firearm was an element of aggravated robbery. The Desha County Circuit Court ruled that, to the extent that the evidence of the gun corroborated an element of the crime of aggravated robbery, it could be used for that purpose. Smith asserted that he just wanted to keep out any mention of the events and crimes that occurred in Drew County at the Tillar airport. The prosecutor replied that he would not use the word "airport," and would advise Barnes and the State's other witnesses not to use the word, saying only that Smith took him "to another location." Smith stated that he would "be open to that." The witnesses subsequently testified accordingly, with Barnes stating that Smith drove him to "another location," and Investigator Scott Woodward testified that he recovered the gun used in the robbery at the "other location."

■ On appeal, Smith asserts that the trial court erred in denying his pretrial motion in limine whereby he tried to keep out evidence that he forced Barnes into the truck at gunpoint; he contends that this evidence was more probative of kidnapping, with which he had not been charged, than of aggravated robbery, and therefore should have been excluded under Ark. R. Evid. 403. We begin with the observation that trial courts have broad discretion in deciding evidentiary issues, and their decisions are not reversed absent an abuse of discretion. *Thomas v. State*, 349 Ark. 447, 69 S.W.3d 864 (2002); *Flores v. State*, 348 Ark. 28, 69 S.W.3d 864 (2002); *McFerrin v. State*, 344 Ark. 671, 42 S.W.3d 529 (2001).

■ ■ The trial court's decision was correct. The general rule is that evidence of other crimes by the accused, not charged in the indictment or information and not a part of the same transaction, is not admissible at the trial of the accused. *Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547 (2000); *Haynes v. State*, 309 Ark. 583, 832 S.W.2d 479 (1992). However, under Ark. R. Evid. 404(b), evidence of other crimes may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The list of exceptions to inadmissibility under Rule 404(b) is not an exclusive list but rather represents examples of the types of circumstances where evidence of

other crimes of wrongs or acts would be relevant and admissible. *See Cook v. State,* 345 Ark. 264, 45 S.W.3d 820 (2001); *Williams v. State,* 343 Ark. 591, 602, 36 S.W.3d 324, 331 (2001).

■ ■ This court has further made it clear that if the introduction of testimony of other crimes, wrongs, or acts is independently relevant to the main issue — relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal — then evidence of that conduct may be admissible with a proper cautionary instruction by the court.[1] *Clem v. State,* 351 Ark. 112, 90 S.W.3d 428 (2002). Thus, if the evidence of another crime, wrong, or act is relevant to show that the offense of which the appellant is accused actually occurred and is not introduced merely to prove bad character, it will not be excluded. *Id.* Stated another way, the test for establishing motive, intent, or plan as a Rule 404(b) exception is whether the evidence of the other act has independent relevance. *Burmingham v. State,* 342 Ark. 95, 27 S.W.3d 351 (2000); *Haire v. State,* 340 Ark. 11, 8 S.W.3d 468 (2000). *See also Burley v. State,* 348 Ark. 422, 73 S.W.3d 600 (2002) (prior bad acts independently relevant to prove motive in not contacting police); *Williams v. State,* 343 Ark. 591, 36 S.W.3d 324 (2001) (prior crime independently relevant as proof of intent to commit charged offenses); *Eliott v. State,* 342 Ark. 237, 27 S.W.3d 432 (2000) (escape conviction was not used to show appellant's character, but was independently relevant to show his consciousness of guilt of the rape offenses).

■ Here, the evidence suggesting or implying a kidnapping — namely, evidence that Smith forced Barnes into his truck at gunpoint and drove him to another location — is independently relevant to the main issue. The fact that Smith still had a handgun in his possession when he and Barnes got out of the truck tends to prove a material point. A person commits aggravated robbery "if he commits robbery as defined in [Ark. Code Ann.] § 5-12-102, and he . . . is *armed with a deadly weapon* or represents by word or

---

[1] Smith failed to request a cautionary instruction, and so he cannot argue that it was error for the trial court to permit testimony on this issue without giving such an instruction.

conduct that he is so armed[.]" Ark. Code Ann. § 5-12-103(a)(1) (Repl. 1997). The State's evidence that tended to show that a kidnapping also took place was independently relevant in the sense that it showed that Smith had a gun, which was necessary to proving an element of the aggravated robbery with which Smith was charged. During pretrial conference, Smith argued that "anything after the point of what happened in the store would be prejudicial." Assuming that objection is sufficient to preserve an argument under Rule 403 on appeal, we conclude that the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice. Not only is the evidence independently relevant, but the state is entitled to prove a case as conclusively as possible. *See Bledsoe v. State*, 344 Ark. 86, 39 S.W.3d 760 (2001). Therefore, although the trial court did not phrase his decision in any specific terms, the court nevertheless did not abuse its discretion in denying Smith's motion in limine.

For his second point on appeal, Smith asserts that the trial court should have granted his motion for mistrial. Arkansas State Police Investigator Roger McLemore was one of the officers who investigated the crime scene at Barnes's store the day after the robbery in Reed. During his testimony, the prosecutor asked him what he had done during his investigation. The following colloquy then occurred:

PROSECUTOR: Was there a crime scene at that location?

McLEMORE: Yes, sir, there was a crime scene there.

PROSECUTOR: Okay. And for what crime?

McLEMORE: I would say the crime of robbery and a crime of kidnapping.

PROSECUTOR: And specifically what kind of robbery?

McLEMORE: It would be aggravated.

PROSECUTOR: Okay. Did you take any statements?

DEFENSE: Objection, your Honor, May we approach? ... At this point I'm going to have to move for a mistrial based on the fact that the other charge was mentioned and it was at the loca-

tion of the store, which I was trying to keep out all this time the inference of a kidnapping at the store. Now, he's saying at the store was the crime scene of the kidnapping. And I move for a mistrial.

The trial court denied the motion. Although Smith initially asked the trial court for a limiting instruction, he almost immediately withdrew the request after agreeing with the State's suggestion that such an instruction might draw more attention to the kidnapping comment. On appeal, Smith argues that the trial court erred in denying his mistrial motion, contending that the jury could have been more prone to believe that he was guilty of the aggravated robbery because of the implication that he had committed multiple crimes.

 This court has held that any reference to a defendant's prior convictions during the guilt phase of a criminal trial results in some prejudice to the defendant. *Hamilton v. State*, 348 Ark. 532, 74 S.W.3d 615 (2002); *Kimble v. State*, 331 Ark. 155, 959 S.W.2d 43 (1998). However, in this regard, the trial court is granted a wide latitude of discretion in granting or denying a motion for mistrial, and the decision of the trial court will not be reversed except for an abuse of that discretion or manifest prejudice to the complaining party. *Hamilton*, 348 Ark. at 542. This court generally adheres to the rule that a cautionary instruction or admonishment to the jury can make harmless any prejudice that might occur from an inadvertent reference to a prior conviction. *Id.* (citing *Strawhacker v. State*, 304 Ark. 726, 804 S.W.2d 720 (1991)). An important factor in our analysis is whether the prosecutor deliberately induced a prejudicial response. *Id.*

 Here, the reference was not to a prior conviction, but to another possible crime that was being investigated. The prosecutor asked Investigator McLemore what kind of crime scene it was; the officer replied first that it was an aggravated robbery, and also a kidnapping. McLemore did not, however, state that Smith had been charged with kidnapping, nor that he had been prosecuted and convicted of that offense. McLemore's statement does not appear to have been a deliberately induced response, but was

instead simply an answer that was perhaps more complete and thorough than Smith would have liked. It was not "so patently inflammatory that justice could not be served by continuing the trial." *Hamilton*, 348 Ark. at 542. Because the trial court was in a better position to judge the effect of the statement on the jury, *see Kimble, supra*, we conclude that there was no error in denying the mistrial motion. We additionally note that, because the evidence suggesting a kidnapping was independently relevant to prove an element of the aggravated robbery, as noted in the point discussed above, Smith cannot demonstrate that he was prejudiced by the officer's reference to a kidnapping crime scene.

 Further, Smith explicitly declined to request a limiting instruction. Such an instruction was held sufficient to cure the prejudice in *Hamilton*. In *Kimble*, this court pointed out that we have held that an admonition is sufficient to cure a reference a witness made to a defendant's "previous record." *Kimble*, 331 Ark. at 160 (citing *Heard v. State*, 322 Ark. 553, 910 S.W.2d 663 (1995)). The *Kimble* court further held that, in that case, an admonition "would have been sufficient to cure any prejudice . . ., but Kimble never requested one. It was clearly Kimble's obligation to ask for a curative instruction, and the failure to do so will not inure to his benefit on appeal." *Id*. at 160. Similarly, in the present case, Smith's decision to decline a curative or limiting instruction precludes reversal on this point.

Finally, Smith asserts that the trial court erred in allowing the State to introduce his convictions arising from the same course of conduct to be used for enhancement purposes during his sentencing at this trial. After the jury convicted Smith of aggravated robbery, the State introduced evidence of Smith's Drew County convictions for kidnapping, attempted murder, rape, first-degree battery, and vehicular piracy. This evidence was introduced under Ark. Code Ann. § 5-4-501(d)(1)(A) (Supp. 2001), which provides that a defendant convicted of a Class Y felony involving violence, including aggravated robbery, who has previously been convicted

of two or more violent felonies enumerated in the statute,[2] shall be sentenced to a term of not less than life in prison.

Smith asserts that, because these "prior" convictions arose out of the same course of conduct as the aggravated robbery, it was error to admit them in order to sentence him to life in prison as a habitual offender. He relies on *Tackett v. State*, 298 Ark. 20, 766 S.W.2d 410 (1989), to support his claim that the Drew County convictions could not be used to enhance his sentence.

In *Tackett*, this court reversed a sentence that had been enhanced under the Habitual Offender Act. There, Tackett had caused an automobile accident on March 24, 1983. The accident killed one passenger in the car struck by Tackett; another passenger, Denise Barrentine, went into a coma as a result of her injuries. On March 30, 1983, Tackett was charged with manslaughter and leaving the scene of the accident. He was convicted of both offenses in September of 1983. In March of 1987, Barrentine died, and the State charged Tackett with manslaughter for recklessly causing her death. At this manslaughter trial, the trial court allowed the State to use Tackett's 1983 manslaughter and leaving-the-scene-of-an-accident convictions, arising from the same incident, in order to enhance his punishment.

On appeal, our court noted first that prior convictions are admissible to enhance punishment pursuant to the Habitual Offender Act, although the conviction was for an offense occurring after the offense on appeal. The *Tackett* court further stated that the obvious intent of the Act was to enhance the punishment of a party who has a habit of criminal conduct, and that the Act was not designed to act as a deterrent, but was simply punitive. *Tackett*, 298 Ark. at 25. However, the court concluded that it was error to allow the use of the 1983 manslaughter conviction to enhance Tackett's punishment for the later death, holding as follows:

---

[2] Among these violent felonies enumerated in the statute are rape, kidnapping, first-degree battery, and attempted capital murder. *See* Ark. Code Ann. § 5-4-501(d)(2)(iii), (v), (vi), and (xiii)(a).

> The manslaughter charge in connection with the [1983] death . . . and the charge for leaving the scene of the accident for which Tackett was previously convicted and the manslaughter charge in connection with the death of Denise Barrentine in the case at bar all arose from Tackett's single act of recklessly driving his car into the victims' car. To utilize these prior convictions arising from one single act to enhance punishment pursuant to the Habitual Offender Act contravenes fundamental fairness and due process. Simply put, there is nothing habitual about the commission of a single criminal act resulting in multiple charges and convictions.

*Id.* at 26.

Tackett is factually distinguishable from the case at hand. In that case, the two manslaughter charges and the charge of leaving the scene of an accident arose out of the identical act: Tackett's striking the victims' car with his truck. In the present case, however, Smith first committed an aggravated robbery by stealing Barnes's bank bag at gunpoint. He then proceeded to a different location, in a different county, where he committed a series of kidnappings, rapes, attempted murders, a battery, and vehicular piracy. These subsequent crimes, for which he was convicted prior to his aggravated robbery trial, did not arise out of the same course of conduct that culminated in the aggravated robbery of Barnes. Other people were involved; the crimes were in a different county; and the crimes were of an entirely different nature than the aggravated robbery. Simply stated, the multiple crimes did not constitute a "single criminal act" or "continuing course of conduct." In the case of *Smith v. State*, 296 Ark. 451, 757 S.W.2d 554 (1988), this court upheld seven separate terroristic threatening convictions arising out of one incident, because there were seven separate victims and because the crime of terroristic threatening was not defined as a "continuing course of conduct." There, the court noted that, "[i]f Smith had killed seven people, it would hardly be argued that he could only be convicted of one count of murder." *Smith*, 296 Ark. at 454.

In the present case, Smith's multiple criminal acts were not a "continuing course of conduct," nor did they arise out of the same transaction, as was the case with *Tackett*'s single car accident from which multiple charges pertaining to different victims arose.

Therefore, there was no error in admitting Smith's earlier convictions to enhance his sentence in this matter.

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no error has been found.

Affirmed.